IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


MONICA STITT                          *
                                      *
          Appellant                   *
                                      *
v.                                    *
                                      *     Civil No.:     PJM 14-938
UNITED STATES DEPARTMENT OF           *
EDUCATION                             *
                                      *
          Appellee                    *


## MEMORANDUM OPINION

This case is on appeal from an order of the United States Bankruptcy Court for this

District. *See In re Monica Stitt*, 12-27357PM (Bankr. D. Md. Sept. 21, 2012); *Stitt v. U.S. Dep't*

*of Education*, 13-0178PM (Bankr. D. Md. Mar. 27, 2013). Plaintiff Monica Stitt, *pro se*, sought

to discharge her student loans aggregating $37,431.38, and also sought $75,000 in damages

against the U.S. Department of Education. The Bankruptcy Court found that her debts to the

Department of Education were excepted from discharge under 11 U.S.C. § 523(a)(8) because she

had not proved undue hardship by a preponderance of the evidence. Specifically, the Bankruptcy

Court held that Stitt failed to show that she had made good faith efforts to repay the loans. The

Bankruptcy Court entered judgment in favor of the Department of Education.  For the reasons

that follow, the decision of the Bankruptcy Court is **AFFIRMED**.

### I.

Monica Stitt is a forty-five year-old woman with no financial dependents. She was

adjudicated as disabled by the U.S. Social Security Administration in 2001. ECF No. 19-1, at

185. The Department of Education ("DOE") holds four student loans disbursed to Stitt between

1989 and 1990, amounting to a total disbursement of $13,250.00. ECF No. 19-1, at 115. They

- 1 -

were all defaulted in 1991 or 1992. ECF No. 19-1, at 120. As of January 15, 2014, the balance

owed to DOE was $37,431.38, of which $15,843.99 was unpaid principal and $21,587.39 was

unpaid accrued interest. ECF No. 19-1, at 82. In 1997, Stitt made nine voluntary payments on her

loans, each in the amount of $10.00, ECF No. 19-1, at 102. Since then she has not made a single

voluntary payment.[1] She has not consolidated her loans. ECF No. 19-1, at 114.

Stitt has held a variety of jobs since 1986, including cashier and data entry work, usually

on a part-time basis. ECF No. 19-1, at 145. Although she attended Howard University from 1989

to 1990, she did not obtain a degree. ECF No. 19-1, at 155. In 2008, Stitt earned $11,000.00 in a

Workforce Recruitment Program for individuals with disabilities, sponsored by the Department

of Labor. ECF No. 19-1, at 145. Of that stipend, $774.47 was withheld and went to repayment of

her student loans. ECF No. 19-1, at 103. Stitt earned a Paralegal Certificate from Montgomery

College in 2008. ECF No. 19-1, at 155. She has not been employed since 2008. ECF No. 19-1, at

145. During the pendency of the adversary proceeding, Stitt enrolled in Stevenson University.

However, she could not obtain the needed financial aid because of her past loan default history

and had to withdraw her from Stevenson[2] without ever attending classes. ECF No. 19-1, at 157.

---

[1] It appears that in 2003 and again in 2004, Stitt was credited with two payments (for $382.04 and for $177.61) towards her DOE loans. The payments appear to have been money withheld pursuant to the U.S. Department of the Treasury's Treasury Offset Program ("TOP"). *See* ECF No. 19-1, at 103; *see also* Def.'s Br., ECF No. 19, at 8 n.1. Under TOP, the Bureau of the Fiscal Service matches a database of delinquent debtors against payments issued by Treasury. With a match, recipients of federal payments who also owe delinquent debts have their payment withheld or reduced to satisfy the debt. *See* Frequently Asked Questions - Treasury Offset Program (TOP), Bureau of the Fiscal Service, http://www.fiscal.treasury.gov/fsservices/gov/debtColl/faqs/debt_questions_top_pub.htm (May 27, 2015). Although the record is unclear which Treasury payments to Stitt were withheld or reduced to satisfy her delinquent debts, it is apparent that Stitt did not make such payments voluntarily.

[2] The Bankruptcy Court's Memorandum of Decision, ECF No. 190-1, at 231, alluded to a scheduled debt to Strayer University, which Stitt herself had listed on her Schedule F – Creditors Holding Unsecured Nonpriority Claims. *See* ECF No. 18, *In re Stitt*, 12-27357 (Bankr. D. Md. Oct. 1, 2012). The scheduled debt to Strayer University, according to Stitt's Schedule F, is "from 2001." It is unclear whether the Bankruptcy Court in fact intended to refer to Stitt's enrollment and requests for Financial Aid from Stevenson University in or around 2013. Any such debt to Strayer University was not held by the Department of Education and would not be relevant to the instant adversarial proceeding.

The Bankruptcy Court found that Stitt owns personal property valued at $210.00. Her monthly income consists of Social Security Disability Payments, a Montgomery County rent supplement, Medicaid, and Public Assistance Programs-Food Supplement. The Bankruptcy Judge also found that although the total value of those public grants exceeds the poverty level, Stitt could not maintain a minimal standard of living for herself based on her current receipts and expenses, even if she were to pay only the daily interest on her student loans of $3.38. *See* ECF No. 190-1, at 231-34.

On September 21, 2012, Stitt filed a Voluntary Petition under Chapter 7 of the United States Bankruptcy Code, and on March 27, 2013, she filed an Adversary Proceeding for a determination of dischargeability of her student loan debt on the basis of undue hardship, pursuant to 11 U.S.C. § 523. The Government opposed discharge of her student loan debt.

The Bankruptcy Court held a trial on February 6 and 11, 2014. On February 12, 2014, the Bankruptcy Judge denied the discharge of Stitt's loans. This appeal followed.

## II.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). On appeal to the district court, a bankruptcy court's legal conclusions are reviewed *de novo,* while factual findings are reviewed for clear error. *Goldman v. Capital City Mortg. Corp. (In re Nieves)*, 648 F.3d 232, 237 (4th Cir. 2011). "The Supreme Court has repeatedly reiterated the extremely deferential nature of the clearly erroneous standard of review." *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 404 (4th Cir. 2005) (Hamilton, J. concurring in part and dissenting in part). "If the [trial] court's account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *United*

*States v. Springer*, 715 F.3d 535, 545 (4th Cir. 2013). A finding of fact is clearly erroneous only

"when although there is evidence to support it, the reviewing court on the entire evidence is left

with the definite and firm conviction that a mistake has been committed." *PBM Prods., LLC v.*

*Mead Johnson & Co.*, 639 F.3d 111, 125 (4th Cir. 2011) (citation and internal quotation marks

omitted). The determination of whether a debtor has met the undue hardship standard is reviewed

*de novo*, and the factual underpinnings of that legal conclusion are reviewed for clear error. *In re*

*Frushour*, 433 F.3d 393, 399 (4th Cir. 2005).

### III.

Debtors receive valuable benefits from Congressionally authorized loans, but Congress in

turn requires loan recipients to repay them in all but the most dire circumstances. *In re Frushour*,

433 F.3d 393, 399 (4th Cir. 2005). Therefore, student loan debts are presumably non-

dischargeable in bankruptcy, "unless excepting such debt from discharge . . . would impose an

undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). Although the

Bankruptcy Code does not define "undue hardship," the Fourth Circuit has adopted the three-part

test of *Brunner v. N.Y. State High Educ. Servs. Corp.* to determine whether a debtor has

established undue hardship within the meaning of section 523(a)(8). *See Frushour*, 433 F.3d at

400 (citing *Brunner*, 831 F.2d 395, 296 (2d Cir. 1987)). Thus, the debtor must establish:

> (1) that the debtor cannot maintain, based on current income and expenses, a 'minimal'
> standard of living for herself and her dependents if forced to repay the loans;
> (2) that additional circumstances exist indicating that this state of affairs is likely to
> persist for a significant portion of the repayment period of the student loans; <u>and</u>
> (3) that the debtor has made good faith efforts to repay the loans.

*Id.* (emphasis added).

Good faith in the third prong consists of the debtor's "efforts to *obtain employment,*

*maximize income,* and *minimize expenses.*" *In re Mosko*, 515 F.3d 319, 324 (4th Cir. 2008)

(emphasis in original). Furthermore, a debtor may not "willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control." *Id.* Finally, the debtor must seriously pursue loan consolidation options. *Id.*

Here, the Bankruptcy Court held that although Stitt met the first two prongs of the test, she failed to satisfy the third requirement of having made good faith efforts to repay. ECF No. 190-1, at 231. As evidence of her lack of good faith, the Bankruptcy Court pointed to her failure to consider loan consolidation options and income sensitive repayment plans. The Bankruptcy Court also pointed to Stitt's failure to make voluntary payments during the period when her income in fact exceeded her expenses. *Id.* at 231-32.

Stitt argues that the Bankruptcy Court erred in concluding that she is eligible for loan consolidation or for income sensitive repayment plans. ECF No. 20, at 12-13, maintaining that the Government's own witness, Lola Hom, testified that those with defaulted student loans cannot qualify for loan consolidation. *Id.* at 15.

However, the Court's review of the record and the applicable regulations confirm the Bankruptcy Court's conclusions to the contrary.

First, Stitt is eligible for loan consolidation. She has four Federal Family Education Loan Program (FFEL) loans held by DOE. ECF 19-1, at 86, 93. Two of her loans are Federal Subsidized Stafford Loans and two are Federal Supplemental Loans for Students. ECF 19-1, at 115. All four of the loans are eligible for consolidation into a Direct Consolidation Loan. *See* 34 C.F.R. § 685.220(b)(1); (b)(15). The default status on her loans does not affect her eligibility. She may consolidate her defaulted loans if she makes three consecutive, voluntary, on-time, full monthly payments on her defaulted loans prior to consolidation, or—more relevant here—if she agrees to repay the new consolidated loan under either the Income Contingent Repayment Plan

("ICR") or the Income Based Repayment Plan ("IBR"). *See* 34 C.F.R. § 685.220(d)(1)(ii)(3); 34 C.F.R. § 685.102(b).

Second, Stitt is eligible for both ICR and IBR once she consolidates her loans. She is currently ineligible to repay her defaulted FFEL loans under either ICR or IBR because defaulted loans do not qualify for both repayment programs. *See* 34 C.F.R. § 685.209(a)(1)(ii); 34 C.F.R. § 685.221(a)(2). However, as described above, loan consolidation will make her eligible for ICR and IBR. *See* 34 C.F.R. § 685.102(b). Put another way, even though a defaulted loan is not eligible to be paid under either ICR or IBR, a borrower in default on eligible loans can obtain eligibility for ICR or IBR plans simply by agreeing to consolidate her loans into single a Direct Consolidation Loan and paying it back under an ICR or IBR plan.

It should also be noted that based on the evidence presented at trial, the Bankruptcy Court correctly concluded that if Stitt were to consolidate her DOE loans and participate in either ICR or IBR, her monthly payment towards her DOE loans would be exactly $0.00. This is because, for purposes of IBR and ICR, Stitt has no discretionary income given that her yearly income of $10,068 falls below 150% of the poverty guideline, which is $11,670 for a household size of one. *See* ECF 19-1, 154-55; Annual Update of the HHS Poverty Guidelines, 79 FR 3593-01. And because she has no discretionary income for purposes of ICR or IBR, her monthly payment towards her DOE loans would be $0.00.

Third, contrary to Stitt's contention, the Government's witness Lola Hom actually testified that Stitt <u>is</u> eligible for loan consolidation. *See* ECF 19-1, at 79. Hom specifically testified that Stitt is immediately eligible to consolidate her loans and that she may repay her loans under either ICR or IBR with an estimated monthly payment of $0.00. *Id.*

Stitt further submits that loan consolidation is not the sole test of proving good faith. She

argues that meeting any of the following standards would be sufficient to prove her good faith: 1)

deferment; 2) past payments; 3) attempts to find other ways to remedy the indebtedness; and 4)

period of time between graduation and bankruptcy filing. ECF 20, at 21. Stitt is correct that,

while courts look to the debtor's willingness to entertain such income-contingent repayment

plans as indicia of good faith, it is not *per se* lack of good faith to fail to consider such a plan. *See*

*In re Burton*, 339 B.R. 856, 886 (Bankr. E.D. Va. 2006); *see also Cota v. U.S. Dep't of Educ. (In*

*re Cota)*, 298 B.R. 408, 420 (Bankr. D. Ariz. 2003). However, when the debtor is supplied with

notice and information of a potentially viable student loan repayment option, the debtor's failure

to look into or otherwise consider this option may contribute to a finding of bad faith. *In re*

*Burton*, 339 B.R. at 888; *see also In re Frushour*, 433 F.3d at 402 (finding a lack of good faith

when the debtor provided insufficient justifications for refusing the income contingent plan

under the William D. Ford Direct Loan Program). The Court finds that the Bankruptcy Court

was therefore not clearly erroneous in finding Stitt's unwillingness to entertain such income-

contingent repayment plans as an indication of lack of good faith.

On January 17, 2014, the Government wrote to Stitt informing her of various loan

consolidation and repayment options available to her under the William D. Ford Program Direct

Loan Program ("Direct Loan Program"). The Government's letter explained that she was

immediately eligible for consolidation and IBR or ICR, under which her estimated monthly

payments would be $0.00. ECF No. 19-1, at 68-70. Stitt's emailed response to the government

stated: "No. And you are really evil and irrational." ECF No. 19-1, at 75. The Bankruptcy Court

stated that Stitt's emailed answer belied any assertion on her part that her actions were taken in

good faith. ECF No. 190-1, at 231. The Bankruptcy Court also concluded, based on the

testimony at trial, that Stitt was unwilling to consider any program that would impose on her the burden of repaying the debt, even if her income were to increase dramatically. *See id.* The Bankruptcy Court particularly noted that Stitt took this position despite the fact that consolidation and income sensitive repayment plans would yield a loan payment of $0.00 per month at her current income, allowing her to maintain her current level of expenditures and to take out new student loans for further education, which could lead to more meaningful employment. These factual findings by the Bankruptcy Court are amply supported by the record, and most certainly indicate that Stitt was unwilling to entertain income contingent repayment plans, justifying a finding that she lacked good faith.

The Court further finds that the Bankruptcy Court could fairly to look to Stitt's failure to make a single voluntary payment when her income unquestionably exceeded her expenses as a demonstration of her lack of a good faith. Although failure to make payments is not bad faith *per se*, a debtor's failure to make payment on the loan while her income substantially exceeded her necessary expenses may constitute lack of good faith. *See In re Mosko*, 515 F.3d at 326. "In determining whether a debtor has made a good faith effort to repay a student loan obligation, a primary consideration is whether the debtor actually made any payments on the obligation, and if so, the total amount of payments." *In re Burton*, 339 B.R. at 882.

Here, the only credit made to Stitt's student loan account since 2007 was $774.47, which was withheld for taxes from an $11,000.00 stipend she received from the Workforce Recruitment Program sponsored by the Department of Labor in summer 2008. Stitt used none of the remaining $10,225.53 ($11,000.00 - $774.47) to repay any portion of her loans. Given Stitt's monthly expenses as set forth in her interrogatories and Schedule J, $1,776.00 and $990.00 respectively, Stitt's stipend of $11,000.00 in the summer of 2008 should have exceeded her

- 8 -

expenses at the time. But instead of repaying even the smallest amount toward her student loans, Stitt admits to having spent her earnings for other expenses, such as "daily expense, credit cards, other educational expense, utilities, food, etc." ECF 12, at 10. In short, the Court concludes that the Bankruptcy Court did not clearly err in finding that Stitt did not make payments on her loans when her income exceeded her expenses. Even considering the difficult circumstances that she faced prior to filing for bankruptcy, the Court similarly concludes that such facts—considered in context of her lack of consideration of consolidation and income sensitive repayment options—indicate overall that Stitt failed to make a good faith effort to repay her student loan obligation when she had the means to do so.

Finally, Stitt attempts to distinguish her case from the precedents relied upon by the Bankruptcy Court and the Government based on the fact that she has a disability which makes finding and hold gainful employment a challenge. Her argument is unpersuasive. Stitt's disability status does not affect her eligibility for income-sensitive repayment plans or loan consolidation. Assuming that Stitt's periods of unemployment or underemployment were caused by a disability, the Bankruptcy Court's Memorandum of Decision did not fault Stitt for her failure to make payments towards her educational loans during periods when her income did not significantly exceed her expenses.

IV.

Summing up:

Stitt's educational debts to the DOE will not be discharged. This does not mean, however, that she is without recourse. The Court reiterates that Stitt is eligible for ICR and IBR repayment plans. Under both ICR and IBR, her monthly payment towards her DOE loans would be $0.00 at her current income level. After participating in either repayment plan for 25 years,

her entire remaining loan balance will be forgiven, and will be forgiven even if her income remains low enough throughout that time such that her monthly payment never exceeds $0.00. *See, e.g.,* 34 C.F.R. § 685.209(b)(3)(iii) (describing ICR loan forgiveness); 34 C.F.R. § 685.221(f) (describing IBR loan forgiveness). True: if circumstances change, and Stitt's income increases, she may have to start making loan payments, but such payments would be limited to a small fraction of her income. What is more, consolidation and enrollment in ICR and IBR may allow Stitt to access additional federal financial aid so that she can complete her education. Although this may not be the fresh start that Stitt has apparently been angling for, the ICR and IBR programs will go a long way towards giving her appropriate relief. The Court strongly urges her to reconsider her opposition participating in these programs.

For the foregoing reasons, the decision of the Bankruptcy Court denying Stitt's discharge of her student loans under 11 U.S.C. § 523(a)(8) is **AFFIRMED**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

June 9, 2015

- 10 -